[Civ. No. 6863. First Appellate District, Division One.—October 29, 1929.]

JOHANNA PETERSON, Respondent, v. THE FIRST NATIONAL BANK OF BAY POINT et al., Appellants.

534

A. Walter Allen, Raymond T. McGlynn, Wade W. Moore and Hugh H. Donovan for Appellants.

Resleure & Hill for Respondent.

GRAY, J., *pro tem.*—In this action for the recovery of Liberty and Victory bonds and a note and mortgage securing the same from the defendant bank, the action having been dismissed as to the other defendants, the pleadings framed for decision the following issues: (1) The character, conditional or absolute, of the delivery to the bank by plaintiff's assignor, her husband, of his promissory note; (2) the conditions under which the bank obtained possession of the

bonds, note and mortgage; (3) the extent of the obligations secured by Carlo Lepori's pledge, and satisfied by its performance, and (4) the validity of plaintiff's title to those bonds and the note and mortgage. Defendant bank appeals from an adverse judgment, based upon findings favorable to plaintiff upon those issues, claiming such findings are unsupported by and contrary to the evidence, and also that the judgment is not in alternative form required in an action of claim and delivery.

Before considering the sufficiency of the evidence to support the findings, it is well to state the law, fixing the boundaries of our task in that regard. "The sufficiency of evidence to establish a given fact is primarily a question for the trial court, and if there is substantial evidence to support the conclusion reached below, the finding is not open to review upon appeal (*Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432]). And so, the finding in question is conclusive on appeal unless this court is convinced that the conclusion reached is without substantial support in the record, bearing in mind that all inferences favorable to its support are to be accorded to it (*Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800] ; *Hind* v. *Oriental Products Co.,* 195 Cal. 655 [235 Pac 438]). Hence, here, where a clear conflict of evidence exists, this court is not justified in disturbing the findings below." (*Allen's Collection Agency* v. *Lee,* 73 Cal. App. 68, 72 [238 Pac. 169, 171].) Therefore, in this opinion, no attempt will be made to fully review all of the voluminous testimony offered at the trial, but the investigation will be limited to ascertain whether there is substantial evidence to support the disputed findings.

On September 15, 1921, after repeated criticisms of certain assets of the bank as uncollectible and futile recommendations for their voluntary elimination, a national bank examiner charged off as losses a portion of those assets, with a result that the bank's capital was impaired to the extent of $16,174.84. Under date of October 6, 1921, the acting Comptroller of the Currency, in the manner and form provided by federal statute, notified the bank of such impairment and that, if either such deficiency were not paid or the bank refused to liquidate, a receiver would be appointed. To consider the problem thus presented, a directors' meeting was held on December 6, 1921, there being present four

directors, including the cashier and plaintiff's husband, the owner of five shares of stock, and Carlo Lepori, the owner of 170 shares, out of a total of 250 shares; also one Irwin, who was neither a stockholder nor director. At the meeting each director, including the cashier, and Irwin executed and delivered his several note, payable to the bank on demand, indorsed by Carlo Lepori. Each note was for the principal sum of $2,750, except that of Irwin, which was for $2,450, making a total of $13,450. The foregoing facts are undisputed. The only difference between the parties is as to the nature of the delivery of each note, the defendant claiming it was an absolute delivery in partial satisfaction of the impairment of $16,174.84, and the plaintiff claiming a conditional delivery, as a loan of credit until the impairment could otherwise be made up. Voluminous testimony of federal banking authorities as to the government's efforts to rehabilitate the bank, its demands in that regard and its understanding of the transaction creates no conflict with the testimony of the actual participants in that meeting. ■ Both parties admit that the minutes of the meeting which treat the transaction as one in which the bank loaned each maker the face of his respective note are incorrect. It being conceded that the minutes were neither complete nor correct, oral testimony as to what actually occurred was properly admitted. (*Lawrence* v. *Premier Indemnity Assur. Co.*, 180 Cal. 688 [182 Pac. 431].) ■ Plaintiff's assignor testified that, at the meeting, Lepori was unwilling to levy a stockholder's assessment to make up the deficiency because of fear that the attendant publicity would be injurious to the bank's credit, and that the directors agreed that each should sign his note, that Lepori should indorse each note and put up security and pay them. The other two directors, Lepori having died prior to trial, and the cashier, each testified to the same effect. The defendant's objection that such oral testimony was inadmissible because it was an attempt to vary the absolute obligation to pay, contained in the terms of each note, is clearly untenable, because it is permissible to show that the delivery was conditional. (*Silva* v. *Gordo*, 65 Cal. App. 486 [224 Pac. 757]; *Allen's Collection Agency* v. *Lee, supra.*) Corroborative of the testimony are the terms of the trust agreement between the bank, Lepori and a trustee, dated January 14, 1921, of which more here-

after and missing minutes, orally shown to have referred to the notes as "Lepori accommodation notes." ▓ This evidence, with the inferences to be drawn therefrom, amply supports the court's finding that plaintiff's assignor and the bank made an agreement whereby the former, for the purpose of establishing the latter's credit during the impairment of its capital, for its accommodation, agreed to loan his credit, as evidenced by his note.

▓ Defendant, because of alleged insufficiency of evidence, challenges the court's finding that Carlo Lepori, for the purpose of securing the payment of the notes, including that of plaintiff's assignor, delivered collateral to a trustee with instructions that if the notes were not paid, the collateral should be applied to their satisfaction. Obviously, this finding is predicated upon the agreement of January 14, 1921, whose terms not only support the finding but also compel it. This agreement first recites that the bank is desirous of removing estimated losses of $16,574.81 (obviously a clerical error for the amount of the impairment) from its current assets, that the directors made their notes and placed same in the current assets of the bank, that to remove losses by putting in such unsecured notes did not meet the law's requirements, and that Lepori, as a large stockholder and as indorser, is desirous of satisfying the government's requirements and is willing to assist in the restoration of all estimated losses up to the date of agreement. It then provides that Lepori has placed in the trustee's possession secured collateral of a face value of $21,340; that the trustee is to hold such collateral until the bank furnishes proof that the directors' note, together with estimated losses of $3,034, have been paid; that the trustee shall credit collections in a trust account for the use of the bank, and that if the directors' notes and the losses of $3,034 were not paid within ninety days, the trustee may, upon thirty days' notice to Lepori, sell the collateral for their face value and deliver the proceeds to the bank to pay directors' notes and the sum of $3,034. The last item does not, as contended by defendant, extend the security to other obligations, but merely provides that if a percentage of those other obligations is paid, the time of the agreement may be extended six months after the expiration of the ninety days. Since neither plaintiff nor her assignor were parties to this agree-

ment, oral testimony as to the obligations secured by it was properly admitted, but the court correctly did not give as much weight to such oral testimony as it did to the solemn recitals of this agreement (*Smith* v. *Goethe,* 159 Cal. 628 [Ann. Cas. 1912C, 1205, 115 Pac. 223]).

The court further found that, prior to the commencement of this action, the bank received from Carlo Lepori, from another named director and from money and property set over to it by the trustee in accordance with the trust agreement, an amount sufficient to pay all the directors' notes including that of plaintiff's assignor, and that all such notes have been fully paid. There can be no dispute as to the sufficiency of the evidence to support the first half of this finding, for without contradiction it appears that two directors other than plaintiff's assignor, paid their respective notes, that Carlo Lepori as indorser paid the cashier's note and that the trustee delivered to the bank all the collateral and proceeds therefrom pledged under the trust agreement sufficient in amount to pay the two remaining directors' notes. But the bank claims that as there was a substitution of obligations secured by the pledge, it was authorized to, and did, apply the receipts from the trustee to the satisfaction of the substituted obligations, leaving nothing to apply to the original obligations, to wit, the notes of the directors, including plaintiff's assignor. Ignoring plaintiff's right to object to such substitution (Civ. Code, sec. 2994), Carlo Lepori, as debtor under his pledge and indorsement, would be the only party who could substitute new obligations to be secured by this pledge (Civ. Code, sec. 1479). The agreement of June 26, 1924, between the trustee, the bank and C. Lepori, admitted by defendant to be some person other than Carlo Lepori, while purporting to make such substitution, does not evidence Carlo Lepori's consent to such substitution, because he was not a party to such agreement. Likewise, the resolution of the bank, consenting to such substitution, fails to show the pledgor's consent to such substitution, because, although Carlo Lepori, as a director, voted for such resolution, the resolution showed the consent solely of the bank and not that of Carlo Lepori. Neither is his consent shown by the correspondence between the bank and trustee and the national banking examiner, for the obvious reason that he was not a party to any of such correspon-

dence. The court, therefore, correctly held that as the original trust agreement was never amended, nullified or superseded, the bank was required to apply the receipts from the trustee to a satisfaction of the unpaid directors' note, in accordance with the plain terms of that agreement.

█ Defendant criticises the court's finding that plaintiff's assignor delivered to the bank the bonds, note and mortgage with the representation he would execute an agreement pledging them as security for his note, and that he subsequently refused so to do and demanded their return, as ambiguous, uncertain and indecisive of the issues because of its failure to positively find that the assignor either did or did not deliver them as security for his note. "Since all presumptions are in favor of the findings of the trial court, an appellate court in reviewing the findings will give them a liberal construction in support of the judgment. Any uncertainties in the findings are to receive such construction as will uphold rather than defeat the judgment, as will give them effect rather than destroy them." (2 Cal. Jur. 871.) Reasonably construed, the court expressly found a delivery under a promise to execute a pledge, and a refusal so to do, and inferentially and necessarily included in the express finding a finding that the bank had no lien because of the nonexecution of the pledge. There was no necessity to find, as suggested by defendant, whether or not it had a general lien under section 3054 of the Civil Code, because no such issue was tendered either by the pleadings or the evidence.

█ The uncontradicted testimony of plaintiff's assignor shows that he gave the bonds to his wife, as purchased, and, prior to their delivery to the bank, and also that he, in writing, assigned the note and mortgage to her after such delivery. The court so found. Defendant now urges that each transfer, having been made without valuable consideration and change of possession, was invalid as a fraud upon the bank as creditor of the assignor. But as the court under those findings above mentioned clearly held that the bank was not a creditor, it is in no position to question the validity of these transfers (*Ackerman* v. *Schultz*, 178 Cal. 190 [172 Pac. 609]).

The judgment awarded to plaintiff possession of the note and mortgage, together with collections thereon and the

value of the bonds. Defendant urges that its failure to provide, in alternative, for the return of the property or its value (Code Civ. Proc., sec. 667) renders it void. ■ Since defendant admitted at the trial that it had previously sold the bonds, any provision for their return would necessarily be unavailing and the judgment was properly for their value (*Erreca* v. *Meyer,* 142 Cal. 308 [75 Pac. 826]; *Skaggs* v. *Taylor,* 77 Cal. App. 519 [247 Pac. 218]). ■ As to the failure to fix the value of the note and mortgage, the code provision is solely for the benefit of the plaintiff, and she is the only one who can complain as to such omission. (*Griffith* v. *Reddick,* 41 Cal. App. 458 [182 Pac. 984]; *Waldeman* v. *Broder,* 10 Cal. 379; *Whetmore* v. *Rupe,* 65 Cal. 237 [3 Pac. 851].) Furthermore, since the evidence discloses that the bank has possession of the note and mortgage and can deliver them to the plaintiff, the failure to make the judgment alternative in form is not erroneous. (*Beggs* v. *Smith,* 26 Cal. App. 532 [147 Pac. 585].)

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 27, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 26, 1929.

All the Justices present concurred.