[Civ. No. 16586. Fourth Dist., Div. One. Apr. 20, 1979.]

JERRY F. ENGLERT, Plaintiff and Appellant, v.
IVAC CORPORATION, Defendant and Appellant.

## COUNSEL

Luce, Forward, Hamilton & Scripps, Robert G. Steiner, Macdonald, Halsted & Laybourne, James J. Slaby, Jr., H. Stephen Cranston and Judith R. Gandel for Defendant and Appellant.

Wiles, Circuit & Tremblay, Maurile C. Tremblay and Glenn A. Davis for Plaintiff and Appellant.

## OPINION

**EHRENFREUND, J.**\*—Ivac Corporation (IVAC) appeals the judgment after special jury verdicts found Jerry F. Englert was entitled to 26,000[1] shares of IVAC stock on payment of $32,500. We affirm the judgment.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]The trial court actually awarded Englert 5,200 shares of IVAC stock because of a one-for-five reverse split.

Englert sought specific recovery of his stock certificates alleging IVAC had wrongfully retained them.

*Facts*

On June 26, 1969, Englert entered into an employment agreement with IVAC,[2] which included the issuance to Englert of 150 shares of IVAC stock at $125 per share. IVAC held the shares as collateral for Englert's promissory note of $18,750. If Englert voluntarily left his employment at IVAC, the company had the right to repurchase the stock; if he involuntarily left the company, Englert had "ninety (90) days after written notice served upon him . . . by IVAC to pay the unpaid balance . . . and . . . release . . . all shares pledges [*sic*] . . . as collateral." On August 27, 1969, the parties executed a second identical contract. On December 4, 1969, Englert signed a letter from Richard Cramer, president of IVAC, confirming the mechanics of payment on the notes at termination.

On March 3, 1971, the parties replaced the original note dated June 26, 1969, with three notes payable on June 26, 1970, June 26, 1971, and June 26, 1972; likewise the note dated August 27, 1969, was replaced with three notes due on August 27, 1970, August 27, 1971, and August 27, 1972. The total face amount of all the notes was $37,500 secured by 300 shares (later 30,000 shares after a stock split) in 6 stock certificates held by IVAC.

Englert voluntarily resigned from the company effective January 2, 1972. On March 23, 1972 Englert, at Cramer's request, returned to IVAC's payroll as a marketing consultant. In a letter dated April 25, 1972, Cramer confirmed Englert's resignation and told him the 90-day period to pay off the note and acquire the stock started running that day. About July 10, 1972, Englert contacted Earl Mortensen, IVAC's treasurer, asking how to pay off his notes. On July 19, 1972, Mortensen sent Englert a letter that he had paid off the note due June 24, 1970 and part of the sum due August 27, 1970 and that 4,000 shares would be released to him. However, Englert, according to Mortensen's letter, retained no right in the remaining shares because he had not paid off the rest of the notes.

On October 12, 1972, Englert sent a letter to IVAC asking how he might pay the notes. He was refused. Englert filed suit on January 29, 1973. In April 1973, IVAC sent Englert an offer to compromise under Code of Civil Procedure section 998. It was never accepted. The stock certificates in question were cancelled on June 29, 1973.

---

[2]Actually the contracts were made with Esta Electronics, Inc., which merged into IVAC. For purposes of this suit it was agreed IVAC was bound by the contracts.

## Specific Shares of Stock
## May Be Subject of Replevin Action

IVAC claims the judgment is erroneous as a matter of law because under both Delaware and California law shares of stock are considered intangible personal property and cannot be replevied (*Bush* v. *Hillman Land Co.* (1938) 22 Del.Ch. 374 [2 A.2d 133, 135-136]; *Ashton* v. *Heydenfeldt* (1899) 124 Cal. 14, 16 [56 P. 624]). ■ However, one must distinguish between shares of stock, a person's intangible ownership interest in a company which cannot be replevied, and the tangible certificates of stock which represent those shares and which can be replevied. Here in his complaint Englert asks that IVAC "redeliver the pledged collateral," that is, the share certificates. In its answer IVAC says it has refused to deliver any pledged shares, which must refer to certificates, to Englert. The action for possession of personal property is proper.

## Cancellation of Shares Certificates
## Does Not Make Judgment Erroneous

■ IVAC claims the judgment is erroneous because the share certificates were cancelled before trial. The California courts, IVAC continues, have no control over the internal affairs of a Delaware corporation and cannot direct it to issue stock. However, the suit to recover the certificates was filed January 29, 1973. The certificates were stamped cancelled and the entry on the share register was cancelled on June 29, 1973, some five months later. The notes for which the certificates served as collateral were never cancelled. If IVAC had left the certificates uncancelled, there would be no argument now about their reissuance. In short, IVAC knowing Englert was seeking the return of his collateral, is trying to frustrate his claim by merely cancelling the certificates saying the courts cannot make it issue any more. Such a ploy is against public policy and would allow IVAC to take advantage of its own wrong (Civ. Code, § 3517). It is not inappropriate to require IVAC to issue new certificates. (*Thompson* v. *Toland* (1874) 48 Cal. 99, 116.)

■ IVAC says the court's finding that none of the shares were destroyed nor disposed of is contrary to the evidence since the shares were cancelled. However, cancellation of shares is not the same as destroying or disposing of shares. The finding the shares were not destroyed or disposed of is not incompatible with the fact the certificates were marked cancelled.

### Judgment Is Not for Specific Performance
### of Obligation but for Recovery of Personal Property

■ IVAC claims the court, by ordering it to issue shares, has in effect, ordered specific performance of an employment contract. IVAC presumably is suggesting that specific enforcement of the contract contravenes Civil Code section 3390 which states that an obligation to render personal service or an obligation to employ another in personal service cannot be specifically enforced. However, Englert is not trying to enforce an employment contract; rather, he is trying to recover securities which he pledged for a debt and which allegedly are being wrongfully withheld from him.

IVAC argues Englert has an adequate remedy at law and thus no right to specific performance. Stock is stock, it continues, and since IVAC shares were publicly traded, an award of money damages was required. To support its claim IVAC cites *Morrison* v. *Land* (1915) 169 Cal. 580, 586 [147 P. 259]. In this case the court added to the plain words of the statute the requirement there be an inadequate legal remedy before specific performance is granted under Civil Code section 3384[3] after this requirement had been deleted when the statute was amended in 1873-1874. IVAC argues by analogy that Civil Code section 3380,[4] specific delivery, which was amended at the same time should be interpreted in the same way. However, under section 3380 deletion of the requirement there be an inadequate remedy at law has been said to broaden its scope (*Harrison* v. *Woodward* (1909) 11 Cal.App. 15, 24-25 [103 P. 933]; see *Law* v. *Title Guarantee & Trust Co.* (1928) 91 Cal.App. 621, 627 [267 P. 565]). In addition, Englert is not seeking specific performance of an obligation. Rather, the stock he seeks is being held as a pledge for a debt. Englert alleges IVAC is wrongfully refusing to return his stock after he offered to repay the debt. On repayment he wants the pledged stock returned, not money damages. Section 3380 recognizes "that the right to recover damages is not a full and adequate remedy for deprivation of personal property" (*Steele* v. *Marlborough Hall Corp.* (1929) 100 Cal.App. 491, 496 [280 P. 380]).

IVAC says the shares of stock are not unique and are not the proper subject for a decree of specific performance. However, there is no

---

[3]The statute as amended reads: "Except as otherwise provided in this article, the specific performance of an obligation may be compelled."

[4]This statute as amended reads: "Any person having the possession or control of a particular article of personal property, of which he is not the owner, may be compelled specifically to deliver it to the person entitled to its immediate possession."

contract of sale under which Englert is seeking specific performance. (*Gilfallan* v. *Gilfallan* (1914) 168 Cal. 23, 25 [141 P. 623].) Rather, stock he owns is being held as a pledge; Englert claims he has properly tendered or is properly excused from tender and IVAC has wrongfully refused to return his personal property. Thus, he properly seeks merely its return.

### Hoese's Testimony Was Properly Excluded

When Englert returned to work on March 23, 1972, Cramer extended the date when payment had to be made on the notes to 90 days after Englert left his employ this second time. IVAC claims that witness Hoese should have been allowed to testify before the jury that this was a variation of the permit to issue stock which had to be amended, was not amended and cannot be enforced because it is an illegal contract (*Tevis* v. *Blanchard* (1954) 122 Cal.App.2d 731, 737 [266 P.2d 85]). ■ However, what constitutes a variation of the permit necessitating an amendment involves interpreting the documents and the Corporations Code—questions of law for the court not questions of fact for the jury. Hoese's testimony was properly excluded. All Cramer did was extend the time for payment of the note while IVAC merely held the stock as collateral. This was not a stock option in which the date of issue was changed. In addition, if IVAC acted illegally in extending Englert's time to pay, it cannot profit from its own wrongdoing by now saying Englert did not pay off the note in time and thus, has no right to the stock.

### Application of California Uniform Commercial Code Not Error

The court concluded that: "Defendant [IVAC] has violated plaintiff's [Englert's] right to the return of his collateral pursuant to [California Uniform Commercial Code] Section 9506 and is therefore liable for 'any loss' caused by its failure to comply with the provisions of Chapter 5, Division 9 of the [California Uniform Commercial Code] Section 9507." These sections provide for damages if the secured party fails to comply with statutory duties under the California Uniform Commercial Code including the debtor's equity of redemption after default. ■ Use of these sections, IVAC claims, emasculates former Corporations Code sections 1107, 1108, providing flexible methods for a corporation to have an employee stock purchase plan because any use of a promissory note to purchase shares would give an automatic right of redemption thus defeating provisions delaying the transfer of title or diluting the effect of a termination. However, Corporation Code sections 1107, 1108 are permissive not mandatory; California Uniform Commercial Code section 9506 can be avoided if the parties agree in writing not to be bound. Any

alleged incompatibility could easily have been avoided by the parties and they cannot now suggest the California Uniform Commercial Code cannot apply.

*Court's Error in Drawing Conclusions*
*Contrary to Findings Not Prejudicial*

IVAC claims use of California Uniform Commercial Code section 9501 et seq. is improper because these sections apply only when the debtor defaults and here the jury found Englert did not default. The court erred in drawing a conclusion requiring a factual basis diametrically opposed to the findings made. However, such error does not warrant a reversal here since the remaining conclusions absent the one challenged support the judgment.

*Facts Do Not Require an Alternative Judgment*

IVAC says the judgment is erroneous because it is not in the alternative as required by Code of Civil Procedure sections 627 and 667 which state in pertinent part: "In an action for the recovery of specific personal property . . . the jury, if their verdict be in favor of the plaintiff . . . must find the value of the property . . . ." (§ 627.) "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery can not be had, the damages for the detention. . . ." (§ 667.) The purpose of the statutes is to protect the party to whom possession is awarded so that if the item claimed is no longer available its cash equivalent will be (Code Civ. Proc., § 667; *Peterson* v. *First Nat. Bank* (1929) 101 Cal.App. 532, 540 [281 P. 1104]). Here Englert did not pray for relief in the alternative; he asked only for return of the stock. The court found the stock at the time of trial was worth $14 per share. However, the judgment only orders the delivery of the stock since this is what Englert sought and the court found that IVAC was capable of delivery of the questioned property. IVAC claims it cannot deliver because the shares have been cancelled. However, as noted above, IVAC stamped the certificates "cancelled" after the complaint seeking their return was filed. As the company which originally issued the stock, IVAC can reissue the questioned certificates to fulfill the judgment. There is no need for an alternative judgment.
In addition, where the property is available for delivery, the failure to provide for its value in the judgment does not void the judgment and is not even error (*Orchardson* v. *Christie* (1916) 30 Cal.App. 8, 10 [157 P. 547]; *Beggs* v. *Smith* (1915) 26 Cal.App. 532, 543-544 [147 P. 585]).

■ At oral argument IVAC contended the trial court's order to issue shares of IVAC stock cannot possibly be carried out because the shares have been cancelled and IVAC no longer exists, having merged with another corporation. However, we read the court's language, "as it is now traded," to accommodate such a change. The judgment can be satisfied, upon Englert's payment of $32,500 by issuing certificates for shares in any successor corporation equivalent to the interest in IVAC awarded by the trial court (see *Henning* v. *Akin* (1928) 91 Cal.App. 246, 251-252 [266 P. 981]).

### *Stock Was Properly Valued at Time of Trial*

■ IVAC says the court erred in valuing the stock as of the time of trial rather than at the time Englert was entitled to possession. Civil Code section 3336[5] states: "The detriment caused by the wrongful conversion of personal property is presumed to be:

"First—The value of the property at the time of the conversion, with the interest from that time, or, *an amount sufficient to indemnify the party injured for the loss* which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

"Second—A fair compensation for the time and money properly expended in pursuit of the property." (Italics added.) Here we deal with the alleged conversion of stock, an item whose value may vary widely over a short period of time. The stock can be made available and Englert is seeking its return, not money damages. If Englert is successful he will receive the stock, whatever its value, at the close of trial. Englert could have sought to recover the full value of the stock, in effect forcing IVAC to buy it. (4 Witkin, Summary of Cal. Law, Torts, § 354.) Thus, it was not improper to value the stock at the time of trial, the time when Englert would, if successful, have the stock and be able to sell it. This would indemnify him for his loss. However, here, even if the trial court erred, it is not prejudicial since Englert did not pray for damages based on the value of the property nor did the court include such value in its judgment.

---

[5]In its brief IVAC cites Civil Code section 3354 for this proposition. However, section 3354 applies to buyers when the seller has breached a sales contract. Here we deal with a conversion, not a sale.

### Concept of Mitigation of Damages Not Applicable

■ IVAC says the court erred because it did not make a finding on mitigation of damages. It suggests Englert should have bought shares on the open market after IVAC told him his request to pay the notes would not be honored. However, mitigation does not apply here. Englert sought the return of his property not damages; there were no damages to mitigate. Thus, the court did not abuse its discretion in refusing to admit evidence of offers to compromise as evidence of Englert's failure to mitigate. Such offers normally are not admissible anyway. (Evid. Code, § 1152; *People* ex rel. *Dept. Pub. Wks.* v. *Southern Pac. Trans. Co.* (1973) 33 Cal.App.3d 960, 969 [109 Cal.Rptr. 525].)

### Question of Ownership of Stock Was Not in Issue at the Trial

■ IVAC contends there is not substantial evidence to support the finding Englert owned the stock because the trial court erroneously excluded evidence of the parties' intent in entering the employment agreements. However, the question of ownership was never raised in the pleadings; both the complaint and the answer agree that Englert bought the stock and pledged it as security for the notes. At trial IVAC refers to Englert as owner of the shares. The question of ownership was not in issue and it was not necessary to offer any evidence on this point (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 4-5 [187 P.2d 752]).

IVAC says that since no extrinsic evidence was admitted on the question of ownership we should examine and interpret the documents as a matter of law (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]). ■ Such an examination shows that the shares were issued "in consideration" for Englert's promissory notes. The promissory notes in turn are "secured by a pledge of securities" consisting of particular shares for each note and "all other shares issuable as the result of any stock splits, stock dividends, reverse stock splits, recapitalizations and other like changes affecting such shares." On the face of these documents Englert owned the shares which he pledged as collateral insuring payment of the promissory notes.

### The Evidence Was Sufficient to Show
### Cramer Had Authority to Grant Extension

IVAC claims there is not sufficient evidence to support the finding Cramer had actual authority to extend Englert's time of payment to 90 days after his termination. ■ The question of agency and authority

is one of fact (*Bergtholdt* v. *Porter Bros. Co.* (1896) 114 Cal. 681, 685 [46 P. 738]). Here there was testimony that Cramer founded IVAC in 1967 and served as its president, chairman of the board and chief executive officer until May 1972. He was in charge of handling the employment agreements and promissory notes and had the responsibility for handling stock. There was evidence it was IVAC's practice to freely extend the time employees had to pay off promissory notes. This is corroborated by Englert's original notes which were reissued and past due. There is no evidence the board ever objected to the practice of Cramer giving extensions. (See *Black* v. *Harrison Home Co.* (1909) 155 Cal. 121, 127 [99 P. 494].) This is substantial evidence to support the finding of actual authority.

IVAC says Cramer lacked even apparent authority to extend payment on the note. ■ However, where as here, the president of a company also conducts the business he has ostensible authority to do any act appropriate in the ordinary course of business (*Memorial Hosp. Assn.* v. *Pac. Grape etc. Co.* (1955) 45 Cal.2d 634, 637 [290 P.2d 481, 50 A.L.R.2d 442]).

*Denial of Englert's Motion to Amend for*
*Punitive Damages Was Proper*

Englert appeals the court's denial of his motion on the day of trial to amend the complaint with an allegation of malice and a prayer for punitive damages. He contends the court applied an incorrect standard as evidenced by its comment that Englert would have to make a strong showing to justify the amendment because it was made so late. ■ However, amendment of a pleading immediately before trial is within the sound discretion of the court (*Richter* v. *Adams* (1941) 43 Cal.App.2d 184, 187 [110 P.2d 486]). Englert had filed an unsuccessful motion to amend five weeks earlier which did not include the allegation of malice. Counsel claimed the proposed amendment would not necessitate the discovery of new evidence. Thus, Englert had had the evidence and the opportunity to suggest this amendment earlier. ■ Unwarranted delay, without more can be a valid reason for denying a motion to amend (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d, 926, 939-940 [119 Cal.Rptr. 82]). There was no abuse of discretion here.

*Englert Not Entitled to Attorney Fees Because*
*Action Not for Breach of Contract*

Englert claims the court erred in not awarding him attorney fees because this suit was a "controversy connected with this note, or security for it. . . ." ■ However, here the action is not one for breach of contract or threatened breach of contract or specific performance of a contract. Rather, it is for specific recovery of personal property or conversion or replevin. An award of attorney fees in such an action is improper (Code Civ. Proc., § 1021).

The judgment is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

The petition of the defendant and appellant for a hearing by the Supreme Court was denied July 25, 1979.