Filed 8/1/16  Whitelaw v. Holtzman CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ROBERT WHITELAW,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JOSHUA A. HOLTZMAN,<br><br>    Defendant and Respondent. | B264488<br><br>(Los Angeles County<br>Super. Ct. No. EC059529) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Jan A. Pluim, Judge.  Affirmed.

Law Office of Scott E. Spell, Scott E. Spell; Bish Law, Mindy S. Bish; Perona, Langer, Beck, Serbin, Mendoza & Harrison, Ellen R. Serbin for Plaintiff and Appellant.

Law Offices of Mark G. Cunningham, Mark G. Cunningham for Defendant and Respondent.

_____

A jury awarded $70,125 to Robert Whitelaw, who was injured in a freeway collision. He seeks a new trial on damages, positing that the trial court's rulings unfairly prejudiced him and perhaps caused the jury to award less than plaintiff hoped to receive. We affirm, finding no abuse of discretion and no miscarriage of justice.

## FACTS

In November 2010, plaintiff was driving on the Ventura Freeway when his pickup truck was struck by a car driven by defendant Joshua Holtzman. Defendant had just passed a California Highway Patrol officer, who saw defendant weaving through traffic at an estimated rate of 120 to 130 miles per hour; from a distance, the officer saw defendant collide with other vehicles. At the scene, defendant admitted to traveling 143 miles per hour before the collision.

Plaintiff was driving within the speed limit and did not see defendant coming up behind him. The impact caused plaintiff's vehicle to spin and strike the center divider. Plaintiff's head hit the roof liner, leaving a dent. He believes that he lost consciousness.

After the accident, plaintiff was "wobbly," but was able, with help, to step out of his pickup truck. He had pain in his head, neck, stomach, back and knee (which had smashed into the dashboard). Defendant left by ambulance on a backboard, and plaintiff drove off with a tow truck driver, who left him at a hospital in Culver City. Plaintiff walked into the hospital, sat down, and was not quite sure why he was there. Then he walked home. He felt dazed and confused.

Plaintiff was 60 years old at the time of trial. He has preexisting medical conditions, including osteoarthritis in his knee, and two work-related back injuries in the 1990's that required surgeries to fuse his neck and back. Despite flare-ups that plaintiff treated with pain medications, he was able to work full time after the surgeries. Since 2005, plaintiff has reported chronic back pain to his physicians.

In December 2010, plaintiff went to an urgent care clinic and was examined by Dr. Kuo, who documented "neck, head, mid back and left knee pain." Plaintiff did not report a lip burn. Dr. Kuo prescribed steroids.

Problems persisted despite plaintiff's use of medication and stretching exercises. In January 2011, plaintiff saw Dr. Garber, an internist and rheumatologist, for treatment of a swollen left foot, knee problems, mid-back, shoulder, rib and neck pain, plus muscle spasms. Dr. Garber had previously documented, in August 2009 and February 2010, before the accident, that plaintiff had pain in his left shoulder, arm and neck, which was treated with cortisone.

Plaintiff did not seek further treatment for two and a half years. The hiatus arose from plaintiff's lack of medical insurance and inability to pay for services, and because he was focused on an excising lip cancer diagnosed in July 2011. One of plaintiff's retained experts felt that plaintiff needed spinal fusion surgery for $200,000 to $250,000, which was contradicted by plaintiff's second expert, who felt that surgery was not indicated "at any point in the future." The defense expert similarly disputed plaintiff's need for surgery, as it could make things worse.

Plaintiff's medical problems did not improve over time. He endures constant pain and uses a walker. Plaintiff claims that he was unable to work in his commercial janitorial business, and was homeless in 2012 and 2013. However, evidence showed that the revenue from plaintiff's business actually increased from $180,614 in 2010 (the year of the accident) to $301,902 in 2011. In 2014, plaintiff's income was about the same as at the time of the accident.

## PROCEDURAL HISTORY

Plaintiff filed this personal injury suit in November 2012, claiming simple negligence with no allegations of intoxication or excessive speed. He designated expert witnesses, on defendant's demand. In January 2015, shortly before trial, plaintiff moved to augment the designation of experts with three additional witnesses. He also requested leave to amend his complaint to seek punitive damages. The motions were denied. During trial, in February 2015, plaintiff renewed his request to amend, to add a cause of action for gross negligence and punitive damages. The court denied the motion.

Defendant admitted liability.  At the outset, the court informed the jury that defendant "is taking responsibility, saying, 'I'm liable for the accident.'  He disputes the nature and extent of the injuries as claimed by Mr. Whitelaw."

In a special verdict, the jury found that defendant's negligence was a substantial factor in causing harm to plaintiff.  It awarded past lost earnings of $10,125; future medical expenses of $10,000; and past non-economic damages of $50,000.  The total damages were $70,125.  The court entered judgment for plaintiff on March 26, 2015.

## DISCUSSION

### 1. Appeal and Review

Plaintiff appeals from a final judgment.  (Code Civ. Proc., § 904.1, subd. (a)(1).) He challenges evidence used for impeachment, plus the denial of his motions to amend the complaint and add expert witnesses.  All three claims call for the application of the abuse of discretion standard of review, as plaintiff notes in his brief.

""""Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.  The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.""""  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

### 2. Motion to Amend the Complaint

Plaintiff challenges the denial of his motion during trial to amend the complaint to conform to proof.  A plaintiff may amend the pleading "in furtherance of justice" (Code Civ. Proc., § 473, subd. (a)(1)), unless a variance between the pleading and the proof "actually misled the adverse party to his prejudice" in maintaining a defense upon the merits.  (Code Civ. Proc., § 469.)  Though amendments to conform to proof are liberally allowed, amendments should not be allowed if they raise new issues not included in the original pleading, causing prejudice to an adverse party who had no opportunity to defend.  (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.)

4

Several questions guide the analysis.  First, are facts or legal theories being changed?  Second, will the opposing party be prejudiced?  (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378.)  Third, is the proposed amendment being "'"""offered after long unexplained delay . . . or where there is a lack of diligence . . .""''" and no valid reason is given?  (*Id.* at p. 1377; *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.)  Here, the answer to these questions is "yes."

a. *Changed Facts or Theories and Prejudice to Defendant*

The complaint alleged that defendant operated his car negligently.  There was no prayer for punitive damages, nor did plaintiff's statement of damages request them.  Based on plaintiff's position, defendant admitted liability to eliminate focus on his driving, so the only issues at trial were causation and damages.

The proposed amendment at trial sought to add a claim of gross negligence because defendant operated his car in excess of 140 miles per hour while weaving through traffic, showing a wanton disregard for life and justifying punitive damages.  Defense counsel countered that the case was prepared for over two years without employing experts or locating percipient witnesses to address defendant's conduct or punitive damages, as these were not at issue.  Settlement evaluations and discussions were predicated on the absence of a request for punitive damages.

Trial courts should not allow eleventh-hour amendments that greatly increase the amount and nature of damages, based on a different theory of the case.  (*Duchrow v. Forrest*, *supra*, 215 Cal.App.4th at pp.1380-1382 [the complaint pleaded damages of $44,082, but the proposed amendment at trial sought $365,044].)  Such an amendment prejudices the defendant, who may have conducted discovery differently, including the retention of experts.  Had it been known from the outset that he was facing far greater damages, he might have settled the case before trial.  (*Ibid.*)

The CHP report was available before plaintiff filed his complaint in 2012:  it was no secret that defendant was speeding when he passed the patrol officer.  Plaintiff's 2013 interrogatory responses assert that defendant was driving under the influence at 143 miles per hour, and plaintiff was notified by letter in 2011 that defendant was convicted of a

5

misdemeanor arising from the accident. But neither party retained or designated accident reconstruction experts to determine defendant's speed at the moment of impact, or whether the rate of speed aggravated plaintiff's injuries.

The trial court did not abuse its discretion in determining that defendant would be prejudiced. Plaintiff did not supply a transcript of the hearing, so we do not know the court's reasoning. The record supports findings that defendant would face unanticipated financial exposure from punitive damages, or would not have admitted liability, or would have settled the case before trial, had he known that plaintiff was going to seek at trial to add new claims justifying punitive damages.

>   b. <u>Unexplained Delay and Lack of Diligence</u>

Plaintiff waited until trial, over two years after filing suit, to seek an amendment. He offered the trial court no reason for the delay. An unexplained two-year delay in seeking amendment shows a lack of diligence, especially when plaintiff had prior access to all the information needed to allege the type and amount of damages sought: he "had the evidence and the opportunity to suggest this amendment earlier." (*Englert v. IVAC Corp.* (1979) 92 Cal.App.3d 178, 190 [an amendment at trial to add a prayer for punitive damages is properly denied]; *Record v.Reason* (1999) 73 Cal.App.4th 472, 486-487 [where the plaintiff knew the circumstances underlying his boating injury for three years, a proposed amendment to allege reckless conduct by the defendant was properly denied].) Plaintiff had access to the CHP report, and asserted in discovery responses that defendant was driving dangerously. Early in the litigation, plaintiff could have made a claim for punitive damages.

A proposed amendment at trial to exponentially increase damages "made unreasonably late and without a reasonable excuse for the delay" is, by itself, a valid reason for denial. (*Duchrow v. Forrest*, *supra*, 215 Cal.App.4th at p. 1380; *Record v. Reason*, *supra*, 73 Cal.App.4th at p. 486.) Plaintiff's unexplained delay, years after the accident, coupled with the prejudice to defendant of unanticipated exposure to punitive damages, justified the trial court's denial of the proposed amendment.

6

**3. Belated Request to Augment Plaintiff's Expert Designation**

Plaintiff produced a designation of experts, at defendant's demand, in July and December 2014: neither mentioned a life care planner, or a forensic economist, or a physical medicine/rehabilitation doctor. In January 2015, plaintiff sent a supplemental designation, provoking an objection by defense counsel. Three weeks before trial, plaintiff filed an ex parte application to augment the designation of experts.

Defendant opposed the belated request to augment because of untimeliness; prejudice to him because he did not designate a life care planner, economist or pain management expert in reliance on the absence of such experts testifying on plaintiff's behalf; and inexcusable neglect because plaintiff has claimed for years that he has ongoing medical problems. The trial court denied the application, finding that (1) plaintiff failed to promptly seek leave to augment and (2) defendant would be prejudiced because he did not designate corresponding counter experts.

The trial court has discretion to allow a party to augment a timely exchange of expert witness information to add the name of any expert witness whom that party has subsequently retained; however, the motion to augment "shall be made at a sufficient time in advance of the time limit for the completion of discovery . . . to permit the deposition of any expert to whom the motion relates to be taken within that time limit. Under exceptional circumstances, the court may permit the motion to be made at a later time." (Code Civ. Proc., § 2034.610, subd. (b).)

Plaintiff's motion to augment, if granted, would have afforded defendant mere days to depose defendant's three new experts, as well as retain and make available counter experts. (Code Civ. Proc., § 2024.030 [parties have the right to complete expert witness discovery on or before the 15th day before the date set for trial].) The trial court found that the motion was not sufficiently in advance of the time limit for completing discovery, and we cannot disagree with the court's assessment. Moreover, plaintiff did not prove "exceptional circumstances" for a last-minute augmentation. Indeed, he offered the trial court no explanation at all why his new experts were not listed during discovery, to give their opinions of plaintiff's future expenses in advance of trial. The

court did not abuse its discretion in finding that defendant would be prejudiced by his inability to locate, retain and depose opposing experts on the eve of trial.

## 4. Impeachment of Plaintiff

In discovery, plaintiff claimed that when the accident occurred, a lit cigarette fell from his mouth, which he quickly reinserted, burning his lip. Six months later, he was diagnosed with a lip cancer that he attributed to the cigarette burn. At trial, plaintiff testified that when the wreck occurred, "I remember the cigarette popping out of my mouth and my grabbing it, putting it back into my mouth" the wrong way, causing a burn on his lower lip. He initially believed that the lip cancer arose from the cigarette burn, but later learned that the two are unrelated.

Plaintiff's pretrial motions asserted that his physicians "will opine" that plaintiff suffered "burns to his lip which developed cancer." At the same time, one of plaintiff's motions stated that he "does not intend to raise any claim or present any special damages relating to the lip injury at trial" and asked the court to exclude evidence relating to his lip injury because it was irrelevant, prejudicial, and would confuse or mislead the jury. Defendant countered that plaintiff attributed the cost of his lip surgery to the accident; however, medical records showed that plaintiff reported to physicians that he suffered a lip burn seven months *after* the accident.

The defense sought to use plaintiff's claims regarding the timing of his lip injury as impeachment. The trial court denied plaintiff's motion to exclude the evidence. At trial, the defense capitalized on the lip burn claim, noting that (1) it was inconsistent with medical reports showing that plaintiff sustained the burn long after the accident, (2) an oncologist found no link between lip cancer and the accident, and (3) plaintiff's claim of grabbing the cigarette in midair during a violent collision was implausible.

Trial testimony from Dr. Kuo indicated that he saw plaintiff in July 2011, at which time plaintiff complained of a sore on his lower lip beginning two weeks earlier, which started out as a burn. Another physician, Dr. Gellman, testified that plaintiff came to his office on June 18, 2011, suffering "a burned lip from a cigarette from a week ago which is still painful."

8

Evidence is "relevant" if it pertains to witness credibility, and has any tendency in reason to prove or disprove a disputed fact of consequence. (Evid. Code, § 210.) Given plaintiff's claim during discovery and at trial that he sustained a burn on his lip from a cigarette during the accident, the defense could impeach plaintiff's credibility by showing that plaintiff reported to two physicians that he suffered a lip burn in June 2011, seven months after the accident.

Plaintiff did not tell Dr. Kuo in December 2010, a month after the accident, that he suffered a lip burn. Nor did plaintiff inform Dr. Garber of a burn when he sought treatment in January 2011. This evidence tends to show that plaintiff was overstating or manufacturing the injuries he sustained during the accident, a point applicable not only to his lip burn, but to other injuries that he attributed to the accident. The jury may consider, when determining credibility, any matter that tends to prove or disprove truthfulness of a witness, including the existence or nonexistence of any fact testified to by him. (Evid. Code, § 780.)

Plaintiff relies upon a case in which the defense sought to introduce evidence of a plaintiff's extramarital affairs to impeach his credibility in a case involving a delaminated tire and a vehicle roll-over. Unsurprisingly, the appellate court found that evidence of marital infidelity is nothing but a "smear" on character that has no use in proving whether the accident was caused by a tire defect or an overloaded vehicle. (*Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1026-1027.) Here, by contrast, the cause, nature and extent of plaintiff's injuries was the only issue being tried, because defendant admitted liability. Evidence relating to plaintiff's honesty about the cause, nature and extent of his injuries was relevant evidence, not a collateral matter.

9

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.