Filed 10/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WRENIS MILES et al., | B299765 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC547126) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley. Affirmed.

Law Offices of Kendra L. Tanacea, Kendra L. Tanacea; Lawson Law Offices, Antonio M. Lawson for Plaintiffs and Appellants.

Tharpe & Howell, Sherry B. Shavit, Nicholas T. Spencer; Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Assistant City Attorney, Scott Marcus and Adena M. Hopenstand, Deputy City Attorneys, for Defendant and Respondent.

_____

Industrial Welfare Commission Wage Order No. 9 obligates the City of Los Angeles to provide meal and rest breaks to persons it employs in the transportation industry.

In this class action, wastewater collection workers employed by the city to clean its sewers allege they worked in the transportation industry because the job required them to drive commercial vehicles needed to clean and pump out sewers and transport refuse to collection locations. They allege the city denied them meal and rest breaks mandated by Wage Order No. 9.

The city moved for summary judgment on the ground that its wastewater collection workers did not work in the transportation industry, but in the sanitation industry. The trial court agreed and granted summary judgment, finding no triable issue existed as to whether plaintiffs worked in the transportation industry.

We agree. For purposes of Industrial Welfare Commission (IWC) wage orders, a sanitation worker does not become part of the transportation industry simply because the waste collected must be transported to collection sites. Therefore, we affirm.

## BACKGROUND

The City of Los Angeles operates and maintains a sewer system. The city employed Wrenis Miles, Patricia Gonzales and James Edwards as wastewater collection workers in the Wastewater Collection Systems Division of its Bureau of Sanitation (Wastewater Division and Sanitation Bureau, respectively).

Wastewater Division ran two shifts, day and night, seven days a week out of six district yards. Directed by work orders charging them with specific tasks at specified locations, collection

crews would remove debris and storm water from the city's catch basins, sidewalk culverts and low flow sewage and storm drain systems and transport the debris to collection and treatment facilities. A Wastewater Division crew typically consisted of a "Wastewater Collection Worker II" acting as the crew leader and a "Wastewater Collection Worker I" or "Maintenance Laborer," who assisted the crew leader. Miles and Gonzales each worked as a Wastewater Collection Worker II, Edwards as a Maintenance Laborer.

Wastewater Division followed Standard Operating Procedures (SOPs) describing four methods the crews used to clean the sewers: "Continuous Rodding"; "Hand Rodding"; "High-Velocity Sewer Cleaners"; and "Storm Water Structure Cleaning."

Continuous rodding involved feeding a mechanical rodder, a motor-driven, flexible stainless steel cable armed with assorted cutting tools, from a spool mounted on a truck into a sewer line to remove roots, obstructions, and deposits in sewer or storm drains. Hand rodding, a labor intensive method, required using hand tools rather than power tools to perform a similar function, and sometimes necessitated digging up private property to locate maintenance holes. High-velocity sewer cleaners used water pressure to remove obstructions and deposits.

Crews used specialized trucks equipped with cleaning and maintenance equipment. These included dump trucks; a "combo cleaner" or "Vactor," which operated by forcing water down a sewer or into a storm drain and vacuuming it back out and storing it in a truck-mounted tank; a "hydro-flusher," similar to a combo cleaner but with no vacuum function; a continuous rodding vehicle, which was equipped with a thousand-foot steel cable on a

3

spool; and a catch basin cleaner, similar to a combo cleaner but equipped with a hand-held water gun and vacuum system.

Some of the trucks were classified as commercial vehicles, requiring the driver to hold a commercial driver's license with tanker and air brake endorsements.

Wastewater Collection Worker II's such as Miles and Gonzales were permitted to drive the commercial vehicles but Maintenance Laborers such as Edwards were not.

The work involved substantial driving each day, sometimes more than 100 miles to as many as 90 work- and disposal sites, often transporting tons of water and debris.

Wastewater Division provided its employees meal and rest breaks as set forth in its Operation and Procedure Handbook: "Each employee shall be granted a minimum fifteen (15) minute rest period in each four (4) hour period; provided, however, that no such rest period shall be taken during the first or last hour of any employee's working day nor in excess of fifteen (15) minutes without the express consent of the designated Supervisor. . . . [¶] Lunch periods shall be thirty (30) minutes in duration and shall be taken at a time determined by the Wastewater Collection Systems Division. Travel time to and from the lunch break shall not be added to the thirty (30) minute time period. In addition, return trips to the yard for lunch without authorization are not permitted."

Plaintiffs filed this lawsuit on behalf of themselves and all other Wastewater Division workers, alleging the city denied them meal and rest breaks from June 2, 2011 to the present. They allege the city restricted workers meal and rest breaks by requiring them to remain on-call at all times, refrain from sleeping on the job, refrain from returning to their yard until the

4

end of their shift, refrain from leaving their work locations during their shift, refrain from using city vehicles for personal business, including traveling to lunch breaks, refrain from congregating with other Wastewater Division employees during their shift, and refrain from leaving their work vehicles during their shift. Plaintiffs asserted claims for compensation under Labor Code sections 226.7, 512 and Wage Order No. 9, and sought injunctive relief attorney's fees.

After substantial law and motion practice spanning years, the city moved for summary judgment, arguing that Wage Order No. 9 did not apply to plaintiffs' class because they did not work in the transportation industry, but instead serviced, cleaned, and maintained the city's sewer and storm drain systems. The city alternatively moved for summary judgment as to the laborers' claims because Wage Order No. 9, which applies only to commercial drivers, did not apply to laborers such as Edwards, who was not permitted to drive the city's commercial vehicles.

The city supported its motion with documents, declarations, and deposition testimony, including the city's "Sewer System Management Plan," the Wastewater Division's standard operating procedures, and plaintiffs' time and work reports, to the effect that the Sanitation Bureau's purpose was to maintain the city's sanitary and storm sewer systems, and that any driving performed by its employees was incidental to that primary objective.

Plaintiffs opposed summary judgment, arguing that the city was estopped from denying that Wage Order No. 9 applies in this litigation, and in any event the wage order covers sanitation workers who must drive commercial vehicles as part of their work, transporting people, debris, and tools on a daily basis.

On April 11, 2019, the trial court issued a tentative ruling indicating it intended to grant the city's motion. When the court reaffirmed its tentative ruling after oral argument, plaintiffs requested leave to file a fifth amended complaint to add a claim under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.; FLSA). The court invited briefing on the issue, but ultimately denied the motion for leave to amend because plaintiffs had failed to diligently assert an FLSA claim, apparently choosing instead to avoid federal question jurisdiction, and permitting amendment at such a late stage in the proceedings would unfairly prejudice the city. The court observed that the case had been pending for four and a half years, and an FLSA claim would require further notification, opt-in, discovery, and possible decertification measures that could not be completed before the five-year deadline to bring the matter to trial.

The court found that Wage Order No. 9 applied only to workers in the transportation industry, and undisputed evidence indicated that Wastewater Division's primary purpose was to maintain the city's sanitary and storm sewer systems, and any driving performed by its employees was incidental to that primary objective. The court therefore found no triable issue existed as to whether Wage Order No. 9 applied to the class, and none existed as to plaintiffs' claims under Labor Code sections 226.7 or 512, which were premised upon a violation of Wage Order No. 9. Accordingly, the trial court granted summary judgment.

Plaintiffs appeal.

## DISCUSSION

Plaintiffs contend the trial court erred in concluding Wage Order No. 9 does not apply here, and in denying their motion for leave to amend. We disagree with both contentions.

## I. Summary Judgment

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*) ["A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action," or that there is a complete defense to the claim]; Code Civ. Proc., § 437c, subds. (c), (o)(1) & (o)(2).) If the defendant makes such a showing, the plaintiff must then demonstrate the existence of one or more disputed issues of material fact as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal, we independently review the entire record that was before the trial court when it granted summary judgment, except any evidence "to which objections have been made and sustained." (*Regents*, *supra*, 4 Cal.5th at p. 618.) We view evidence in a light most favorable to the opposing party, and resolve evidentiary doubts and ambiguities in that party's favor. (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.)

Meal periods "have long been viewed as part of the remedial worker protection framework. [Citations.]" *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105.)

7

Labor Code section 512,[1] effective January 1, 2000 (Stats. 1999, ch. 134, § 6), codified meal-break requirements for employees working more than five hours in one day, requiring employers to provide employees with meal breaks "of not less than 30 minutes" for workdays of more than five hours, and to provide two 30-minute meal breaks for workdays of more than 10 hours. (§ 512, subd. (a).)

Section 226.7 allows the IWC to regulate meal breaks. Subdivision (a) of that section provides that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Subdivision (b) fixes the compensation to be paid by an employer for its failure to provide a mandated meal break. (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1114.)

The IWC promulgated 18 wage orders, one specifying minimum wages and remaining 17 covering specific industries or occupations. IWC orders generally do not apply to a charter city such as the City of Los Angeles. (See Cal. Const., art. XI, § 5, subd. (a) [city may adopt "home rule" provisions in its charter, allowing it to "make and enforce all ordinances and regulations in respect to municipal affairs" without restriction by the general laws of the state]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1082; L.A. City Charter, art. I, § 101.) Therefore, nearly all the wage orders exempt public employees from most provisions, including meal and rest period provisions. (E.g., Wage Order No. 5-2001 §1(B) ["Except as provided in Sections 1,

_____

[1] Undesignated statutory references will be to the Labor Code.

8

2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district"]; see also Wage Orders Nos. 1-2001 §l(B), 2-2001 §l(B), 3-2001 §l(B), 4-2001 §l(B), 5-2001 §l(C), 6-2001 §l(B), 7-2001 §l(B), 8-2001 §l(B), 10-2001 §l(C), 11-2001 §1(B), 12-2001 §l(B), 13-2001 §l(B), 16-2001 §l(B) [same].)

But in 2003, the Legislature added section 512.5, permitting the IWC to adopt a wage order applying to public employee drivers.  Consistent with that provision, in 2004 the IWC amended Wage Order No. 9 (which applies to the transportation industry) to make its meal break provisions apply to "commercial drivers employed by government entities."

In its current form, Wage Order No. 9 states "This order shall apply to all persons employed in the transportation industry . . . ." (Wage Order No. 9, § 1.)  The wage order provides, as pertinent here, that "commercial drivers . . . directly employed by the State or any political subdivision thereof, including any city," must be provided a minimum 30-minute meal break after each five hours worked, and that unless the employee is relieved of all duty during the break, "the meal period shall be considered an 'on duty' meal period and counted as time worked."  (*Id.* at §§ 1(B), 11, 12(C).)  The order defines "transportation industry" as "any industry, business or establishment operated for the purpose of conveying persons or property from one place to another . . . ." (*Id.* at § 2(P).)  It defines "commercial driver as "an employee who operates a vehicle described" as a commercial vehicle by the Vehicle Code.  (Wage Order No. 9, § 2(C).)

Thus, to be covered by Wage Order No. 9, an employee must be a "commercial driver" in the "transportation industry."

9

The issue here is whether the city's Bureau of Sanitation (or the bureau's Wastewater Division) is in the transportation, i.e., is a business or establishment that operates for the purpose of conveying persons or property from one place to another.

We apply ordinary principles of statutory interpretation to interpret a wage order.  (*Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 73.)  We look "first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent,' " giving the words "their plain and commonsense meaning."  (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1103.)  We must generally avoid a construction that renders part of a statute meaningless or inoperative.  (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 375.)

For purposes of wage orders, the "main purpose of the business, not the job duties of the employee, determines which wage order applies in any given case."  (*Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 513, fn. 1.)  The California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) offers some guidance.  It "has historically taken the position that the primary function of the employer is to be the determining factor in establishing the proper IWC Order applicable to the employees."  DLSE opinion letters are not controlling, but "they reflect the type of experience and considered judgment that may properly inform [a court's] judgment."  (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 267.)

In short, Wage Order No. 9 states that a business or establishment whose *purpose* is transportation is considered to be in the transportation industry.  It does not say that any work

10

*involving* transportation places an establishment within the transportation industry.  To hold that incidental activities bring the Wastewater Division or Sanitation Bureau within Wage Order No. 9 would read the word "purpose" right out of the order. (We might reach a different conclusion if the city maintained a separate division for the purpose of transporting people or property from one place to another.)

Here undisputed evidence indicated that the purpose of the city's Sanitation Bureau and Wastewater Division was to clean the city's sewers.  Although some employees were required to operate commercial vehicles to carry out that function, operation of the vehicles was not the bureau's or division's primary purpose, but was only incidental to that purpose.  Because for purposes of Wage Order No. 9, the transportation industry includes only those establishments whose purpose is transportation, no triable issue existed as to whether plaintiffs worked in the transportation industry.  Summary judgment was therefore proper as to plaintiffs' claims under Wage Order No. 9, and to their derivative Labor Code claims.

Plaintiffs argue the city stipulated that Wage Order No. 9 is the only regulation under which plaintiffs could recover and therefore is the controlling regulation in this case.  Although they acknowledge that the parties did not stipulate to the merits of plaintiffs' claims under the wage order, they contend the city is estopped from arguing the order does not apply at all.  We disagree.

In April 2015, the parties and the court took part in an informal conference regarding a demurrer set on the court's own motion.  During the conference, plaintiffs agreed to abandon their claims for relief under Wage Orders Nos. 4, 5, 16 and 17.  In a

11

joint status report regarding the demurrer, the parties stated the city's position, "The only applicable statute or Wage Order under which Plaintiffs may be entitled to relief is Wage Order 9, which covers meal and rest breaks for City employees with respect to commercial drivers; but the [complaint] lacks sufficient factual allegations to establish such violations." In a memorandum of points and authorities supporting a subsequent motion to strike, the city agreed that "[a]ll that should be left is Plaintiffs' claim based on Wage Order 9, covering commercial drivers." In its tentative ruling on the motion to strike, the trial court said, "the City concedes that Wage Order 9 applies."

The most we can take from these statements is that the city agreed Wage Order No. 9 was the only possible wage order available to plaintiffs because none of the other orders, which contain no exception for commercial drivers working for municipal entities, applied. But the city's position that the complaint "lack[ed] sufficient factual allegations" to establish a violation under Wage Order No. 9 preserved its right to contend that the order did not apply in the first instance because plaintiffs did not work in the transportation industry—a factual allegation.

Plaintiffs argue we need not determine whether the Sanitation Bureau's "primary purpose" was transportation in determining whether plaintiffs were employed in the transportation industry. The point is irrelevant because the Sanitation Bureau's *only* purpose is sanitation. Transportation of wastewater and pollutants is merely incidental to that purpose.

Plaintiffs argue a triable issue exists as to whether they were employed in the transportation industry because when they were hired, the job posting informed them that they would be

subject to random drug testing under the federal Omnibus Transportation Act of 1994, requires drug and alcohol testing for safety-sensitive transportation employees in aviation, trucking, railroads, mass transit, pipelines, and other transportation industries. (See 49 C.F.R. § 653.) They also argue a triable issue exists because their job duties included conducting pre-trip inspections of their commercial vehicles, driving to worksites, and transporting wastewater and debris to treatment facilities. But neither the city's requirement that employees undergo drug testing pursuant to the Transportation Act, nor job duties that include transportation, mean that the Sanitation Bureau "operated for the purpose of conveying persons or property from one place to another . . . ." (Wage Order No. 9, § 2(P).)

Plaintiffs argue the facts in this case are materially identical to those resolved in *Gravina v. City of Los Angeles* (Super. Ct. L.A. County, 2014, No. BC356014), where the trial court found that the City's sanitation workers who drove trash collection trucks were covered by Wage Order No. 9. This may or may not be so, but to the extent it is, we disagree with *Gravina*.

## II. Leave to Amend

Plaintiffs contend the trial court abused its discretion in denying them leave to amend to assert a federal claim. We disagree.

Generally, leave to amend should be liberally granted. However, unwarranted delay justifies denial of leave to amend. (*Englert v. IVAC Corp.* (1979) 92 Cal.App.3d 178, 190; *Melican v. Regents of the University of California* (2007) 151 Cal.App.4th 168, 175; *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613 [it "is well settled that a long

13

deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment"].)  And the liberal policy favoring leave to amend "applies 'only [w]here no prejudice is shown to the adverse party.' " (*Melican*, at p. 175 [leave to amend properly denied where request to amend was made during a summary judgment hearing and plaintiff had known about the underlying facts for five years].)  Prejudice exists where the proposed amendment would require delaying the trial, resulting in added costs of preparation and increased discovery burdens.  (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486-488.)

We review a denial of leave to amend for abuse of discretion.

Here, plaintiffs waited until four and a half years into the litigation to assert a federal claim, admittedly doing so only after the court indicated its intent to grant summary judgment.  The trial court noted that plaintiffs could have brought their FLSA claim at the outset of this litigation, but apparently desired to avoid federal question jurisdiction and a subsequent removal of the action to federal court.  Under these circumstances, the court acted well within its discretion in denying leave to amend.

14

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.

CERTIFIED FOR PUBLICATION


                                              CHANEY, J.

We concur:


        ROTHSCHILD, P. J.


        SINANIAN, J.*

---

        * Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15